896 F.2d 664
 Timothy E. RUSSELL, Plaintiff-Appellant,
v.
Leonard G. DUNSTON, Individually and as Director of the New
York State Division for Youth, Robert A. Wiley, Individually
and as Director of Harlem Valley Secure Center, and Edward
V. Regan, Individually and as Comptroller of the New York
State Employees' Retirement System, Defendants-Appellees.
 No. 552, Docket 89-7800.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 6, 1989.
Decided Feb. 12, 1990.
 
 Richard E. Casagrande, Albany, N.Y., for plaintiff-appellant.
 Nancy Miller Lerner, Asst. Atty. Gen. (Robert Abrams, Atty. Gen. of the State of New York, Ellen J. Fried, Marilyn T. Trautfield, Asst. Attys. Gen., New York City, of counsel), for defendants-appellees.
 Before LUMBARD, NEWMAN and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 This action, brought under 42 U.S.C. Sec. 1983, questions the constitutional adequacy of the notice given to an applicant for disability retirement benefits regarding the appropriate time for filing. Appellant Timothy E. Russell contends that the failure to provide notice prior to the termination of his medical leave status deprived him of property rights without due process because that termination also marked the end of his application period for disability retirement.
 
 
 2
 Judge Griesa, without passing on the merits of the due process claim, granted summary judgment for defendants on the ground that the Eleventh Amendment barred the relief sought by Russell. Although we conclude that an order reinstating Russell to medical leave for purposes of his applying for disability retirement is prospective relief permitted by the Eleventh Amendment, we hold that Russell's due process rights were not violated. We therefore affirm.BACKGROUND
 
 
 3
 The facts are undisputed. In September 1981 plaintiff Timothy Russell was appointed by the New York State Division for Youth as a Youth Division Aide at the Harlem Valley Secure Center. In June 1982, Russell became a Vocational Instructor at the Center. Because these were "permanent" positions under New York's Retirement and Social Security Law. See N.Y.Retire. & Soc.Sec.Law Sec. 500 (McKinney 1987 & Supp.1990) ("RSSL Section 500"), Russell was required to become a contributory participant in the New York State Employees' Retirement System ("ERS").
 
 
 4
 On September 21, 1983, Russell was struck on the head by a chair while trying to break up a fight between residents of the Center. The injuries Russell received disabled him. New York's statutory scheme for disabled state workers creates two classifications for state workers disabled by a work-related injury. The first classification is for workers who believe themselves temporarily disabled and wish to preserve certain reinstatement rights to their job. This is governed by New York Civil Service Law, N.Y.Civ.Serv.Law Sec. 71 (McKinney 1983) ("CSL Section 71"), which affords a one-year medical leave of absence as of right and certain reinstatement rights for one year after termination of the disability.[1] The second classification is for workers who believe themselves permanently disabled. This is governed by New York's disability retirement law, N.Y.Retire. & Soc.Sec. Law Sec. 605 (McKinney 1987 & Supp.1990) ("RSSL Section 605"), which provides that an application for disability retirement must be made (a) within three months of the last day the employee was on the payroll or (b) within twelve months of the last payroll date and while the employee is still on a medical leave of absence without pay.[2]
 
 
 5
 Russell was placed on a CSL Section 71 medical leave of absence and was on workers' compensation leave until March 21, 1984. On March 12, the Harlem Valley Center informed him that his 120 compensation days would be exhausted as of March 21 and his accruals of sick and personal days would next be applied. After those were exhausted, the letter continued, Russell could apply for a further ten weeks at half-pay. This he did, by letter of March 27. On June 27, 1984, his pay was discontinued, although he remained on medical leave. On November 28, 1984, Russell received a check based on a payroll adjustment. Finally, in a December 18 letter, Russell was notified by defendant Robert A. Wiley, director of the Harlem Valley facility, that his leave of absence was terminated as of that date. The letter stated that "[i]n accordance with Section 71 (attached), within one year of the termination of your disability, you may apply for reinstatement."
 
 
 6
 In March 1985, Russell filed an application for disability retirement under RSSL Section 605. Defendant Edward Regan ("Comptroller") denied the application as untimely because it had not been made either within three months of Russell's last day on the payroll or within twelve months of the last payroll date and during the pendency of a medical leave of absence. See RSSL Section 605(b)(2), supra note 2. At Russell's request, a hearing for redetermination was conducted in May 1986, but the hearing officer upheld the Comptroller's finding by a decision dated October 31, 1986. The hearing officer noted that even if the receipt of the November 24 payroll adjustment constituted being on the payroll, Russell's application was still untimely. On December 8, 1986, the Comptroller issued a final determination denying Russell's application for benefits.
 
 
 7
 On October 30, 1987, Russell brought the present action seeking, inter alia, an injunction requiring defendants to reinstate him to medical leave and to determine his eligibility for retirement benefits on the merits. The gravamen of his claim was that he had a property interest in disability retirement benefits of which he was deprived by the December 18 letter without constitutionally adequate notice.
 
 
 8
 On cross-motions for summary judgment, the district court ruled for the defendants, dismissing the complaint on the ground that the injunctive relief sought was a retroactive remedy against the state and therefore barred by the Eleventh Amendment. Russell v. Dunston, No. 87 Civ. 7749 (TPG), 1989 WL 74956 (S.D.N.Y. June 26, 1989). In so ruling, Judge Griesa concluded that Russell's claim was "inherently one against the State of New York, since [his] problem is with State law and policy, which the defendants merely carried out in their official capacity." Russell, slip op. at 7. He also observed that the object of the complaint was "to alter a past determination under this policy rather than change the policy for the future." Id. He did not reach the due process issue. Russell appeals.
 
 DISCUSSION
 
 9
 Russell asks that we reverse the district court's ruling that the Eleventh Amendment bars the relief requested and that we grant him summary judgment on his due process claim. We agree as to the Eleventh Amendment issue but believe that he was not deprived of his right to due process.
 
 1. The Eleventh Amendment
 
 10
 The Eleventh Amendment to the Constitution bars suits against a state in federal court unless that state has consented to the litigation, see Papasan v. Allain, 478 U.S. 265, 276-77, 106 S.Ct. 2932, 2939-40, 92 L.Ed.2d 209 (1986); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984), or Congress has permissibly enacted legislation specifically overriding the state's immunity, see Fitzpatrick v. Bitzer, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). An unconsenting state is immune not only from suits for damages but also from declaratory and equitable actions. See Cory v. White, 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982); Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam).
 
 
 11
 Actions against state officials are also barred by the Amendment where the relief granted would bind the state or where the state is the real party in interest. See Pennhurst, 465 U.S. at 101, 104 S.Ct. at 908. Excepted, however, from this general proscription are suits against a state officer alleging the violation of federal law in which injunctive relief governs only the officer's future conduct and does not provide a retroactive remedy. See Edelman v. Jordan, 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974); Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir.1985), modified, 793 F.2d 457 (2d Cir.1986).
 
 
 12
 Russell does not seek monetary relief in his federal action. Rather, he seeks an injunction requiring the defendant state officials to reinstate him to his medical leave status, thus effectively removing the time bar to his application for disability retirement imposed by RSSL Section 605(b)(2). The issue is whether such an injunction is "prospective" relief within the meaning of the exception.
 
 
 13
 In Dwyer v. Regan, an ERS employee challenged the termination of his employment under Section 1983 and sought, inter alia, reinstatement. 777 F.2d at 827-28. We held that "[r]einstatement is purely prospective injunctive relief that orders the state official to return the former employee to the state's payroll," id. at 836, and that "an order that reinstatement be granted or that a reinstatement hearing be conducted is the sort of prospective relief that is not barred by the Eleventh Amendment," id. (citing Edelman, 415 U.S. at 664, 94 S.Ct. at 1356).
 
 
 14
 Defendants argue that reinstatement to employment is somehow to be distinguished from the injunction sought by Russell because the relief Russell seeks would be "the mechanism which would enable plaintiff to seek to have the Comptroller's determination changed and to have disability retirement benefits paid to him." Brief for Appellees at 12. The possibility that the injunctive relief sought by Russell might result in payments from the state treasury, however, hardly distinguishes Dwyer. To the contrary, the reinstatement in Dwyer directly entitled the plaintiff to a salary and thus had a far more certain and immediate effect on the state treasury than would result from allowing Russell merely to apply for disability retirement. Furthermore, the reinstatement in Dwyer, like the relief sought in the instant case, contemplated "chang[ing] the result of an action ... already taken." Russell, slip op. at 6. We do not agree with the district court that the existence of a past harm renders an otherwise forward-looking injunction retroactive. If it did, the rule allowing prospective relief would be substantially undermined because the need for prospective relief often arises out of a past injury. See Milliken v. Bradley, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977). Under Dwyer, therefore, Russell's reinstatement to medical leave would be prospective relief and not barred by the Eleventh Amendment. See 777 F.2d at 836; see also Barnes v. Bosley, 828 F.2d 1253, 1257 (8th Cir.1987); Kashani v. Purdue Univ., 813 F.2d 843, 848 (7th Cir.), cert. denied, 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987).
 
 2. Russell's Due Process Claim
 
 15
 Because both parties have fully briefed the due process issue and it can be disposed of as a matter of law, we see no reason to remand. We now turn to that issue.
 
 
 16
 RSSL Section 605(b)(2) put Russell on notice that if he sought disability retirement, he would have to apply either within three months of his last date on the payroll or within one year of his payroll termination and while he was still on medical leave of absence. Under CSL Section 71, see supra note 1, he was guaranteed such leave for a period of one year from his injury, or until September 21, 1984. Thereafter, such leave appears to have been at the discretion of the employing agency, here the Harlem Valley facility. Russell's claim, therefore, is that because the discretionary termination of his medical leave on December 18, 1984 also terminated the application period for disability retirement, he was entitled to pre-termination notice sufficient to permit him to apply for disability retirement.
 
 
 17
 The entitlement to disability retirement is a constitutionally protected property interest for purposes of Section 1983. See Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). We have previously held that municipal employee retirement benefits are constitutionally protected property, see Winston v. City of New York, 759 F.2d 242, 247-49 (2d Cir.1985); Basciano v. Herkimer, 605 F.2d 605, 609 (2d Cir.1978), cert. denied, 442 U.S. 929, 99 S.Ct. 2858, 61 L.Ed.2d 296 (1979), and the New York State Constitution itself provides: "membership in any pension or retirement system of the state ... shall be a contractual relationship, the benefits of which shall not be diminished or impaired," N.Y. Const. art. V, Sec. 7. This is all that Roth requires. See 408 U.S. at 577, 92 S.Ct. at 2709 (property interest requires "legitimate claim of entitlement").
 
 
 18
 We also reject defendants' argument that Article 78 of the New York Civil Practice Law & Rules, N.Y.Civ.Prac.L. & R. Secs. 7801-7806 (McKinney 1981 & Supp.1990) ("Article 78"), provides an adequate post-deprivation state remedy. Cf. Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Article 78 does provide a means of reviewing the merits of the Comptroller's determination as to eligibility. See N.Y. Retire. & Soc.Sec. Law Sec. 74(d) (McKinney 1987) (providing for Article 78 review). Russell, however, is not challenging the Comptroller's finding of untimeliness, but rather the failure to give him pre-termination notice sufficient to allow him time to apply for disability retirement. The defendants rely heavily on our decision in Campo v. New York City Employees' Retirement System, 843 F.2d 96 (2d Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988), as holding that Article 78 is a sufficient remedy in such circumstances. Campo, however, held only that a retirement claimant was not denied constitutional due process where her claim of random procedural error could have been redressed by a state court in an Article 78 proceeding. Russell does not claim that he was deprived of the right to apply for benefits by random procedural error. Rather, he concedes his application was untimely under RSSL Section 605 and challenges the fact that pre-termination notice of the discretionary discontinuance of medical leave is not provided by state law. That challenge, if meritorious, can be entertained under Section 1983.
 
 
 19
 Nevertheless, we reject Russell's due process claim because New York has a valid reason for not giving such notice. CSL Section 71 expressly states that an injured employee has a right to one year of medical leave (and by implication a discretionary period thereafter) "unless his disability is of such a nature as to permanently incapacitate him." See supra note 1. If Russell believed himself to be permanently disabled, therefore, state law obliged him to seek disability retirement, even though a favorable ruling on that application would terminate his leave of absence and reinstatement rights. Where a state employee like Russell chooses to continue to exercise rights under CSL Section 71 rather than to seek disability retirement, New York treats that decision as a statement that the employee does not consider himself or herself permanently disabled and needs no pretermination notice concerning medical leave.
 
 
 20
 In Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court established three factors to be considered in evaluating an administrative procedure under the due process clause:
 
 
 21
 First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 
 
 22
 Id. at 335, 96 S.Ct. at 903. As to the first of these factors, the private interest at issue here is concededly great--Russell claims an entitlement to some $200,000 over the years he would be covered. The second Mathews factor, however, is minimal. There is simply very little risk in the statutory scheme of erroneous disentitlement--at least in Russell's circumstances--because the state has made it clear that employees who believe they are disabled should apply for disability retirement under RSSL Section 605 rather than continue on CSL Section 71 medical leave with reinstatement rights. Russell makes no claim that he discovered the permanent status of his disability so close to learning of the December 18 termination that he had no time to apply. Rather, he claims a constitutional right to maintain his medical leave under CSL Section 71 as long as possible and then an additional period of time within which to make a claim of permanent disability.
 
 
 23
 Continuing the Mathews analysis, we believe New York has an interest in discouraging employees who are on medical leave from prolonging that status to claim permanent disability only when the employing agency terminates the medical leave. Benefits differ between disabled workers who might return and those who will not, and orderly hiring of new employees is enhanced by accurate information as to which employees are permanently disabled. We therefore believe that New York may require employees who suspect they are permanently disabled to apply for disability retirement when that suspicion arises and to view continued enjoyment of medical leave under CSL Section 71 without an application under RSSL Section 605 as a statement by the employee that he or she is not permanently disabled. Such an employee needs no notice regarding termination of the time period for applying for disability retirement. An employee suspecting permanent disability can apply for disability retirement, and, if rejected on the merits, can continue to enjoy CSL Section 71 rights. Russell thus had ample notice and time to apply if he believed himself permanently disabled.
 
 
 24
 Affirmed.
 
 LUMBARD, Circuit Judge, dissenting:
 
 25
 I disagree with the majority's conclusion that Russell was not entitled to pretermination notice. Russell was apparently entitled on the merits to the disability retirement benefits and thus had as much of a property interest in the opportunity to apply for those benefits as he had in the benefits themselves. Because terminating his medical leave was the equivalent of terminating his final opportunity to apply, I believe he should have received advance notice.
 
 
 26
 RSSL Section 605 grants state employees on medical leave the right to claim permanent disability benefits:
 
 
 27
 The application must be filed within three months from the last date the member was being paid on the payroll or within twelve months of the last date he was being paid on the payroll provided he was on a leave of absence for medical reasons without pay during such twelve month period provided the member was disabled at the time he ceased being paid.
 
 
 28
 RSSL Sec. 605 (emphasis added). Given the emphasized language, I do not understand how the majority can conclude that New York treats a state employee's decision to remain on medical leave "as a statement that the employee does not consider himself or herself permanently disabled." The majority apparently believes that, by taking medical leave, Russell waived any claim to disability retirement benefits he had or might later make and that therefore Russell had no protected interest of which he may not be deprived without advance notice. But I think it beyond dispute that the State considers an employee's decision to remain on medical leave a statement that the employee, with the full blessing of the State, needs more time in which to decide whether to consider himself or herself permanently disabled.
 
 
 29
 Although the majority appears to consider medical leave status a sort of "temporary disabled list" for employees who know from the outset that they are not permanently disabled, it is obvious that many employees simply cannot know immediately after injury whether their disability will become permanent. The vagaries of healing and diagnosis make it almost impossible for doctors, not to mention injured state employees such as Russell, to predict the permanence of a disability without a reasonable lapse of time in which to gauge the body's healing or disability. Clearly, RSSL Section 605 contemplates that state employees, at some point during medical leave, might choose to consider themselves permanently disabled. By taking medical leave, Russell preserved his right to claim disability retirement benefits and therefore was entitled to pretermination notice.
 
 
 30
 I also disagree with the majority's analysis of the second Mathews factor, which concerns the risk of erroneous deprivation and the value of additional procedural safeguards. The absence of pretermination notice in cases such as this creates an unacceptably high risk of erroneous disentitlement for qualified employees. For example, when in September 1984 Russell asked responsible officials of the New York State Division for Youth about his retirement rights, he was informed--erroneously--that he needed ten years of service to apply for disability retirement benefits.[1] Had Russell received the appropriate notice, this error could have been remedied.
 
 
 31
 Even if Russell had never asked about his rights but had nonetheless received the letter terminating his medical leave, the resulting foreclosure of his opportunity to apply would still have been erroneous simply because Russell, in whose favor the court must resolve all doubts on the defendants' summary judgment motion, was apparently entitled on the merits to the benefits he seeks. If responsible state officials are misinformed about retirement rights, I do not see how Russell could have been expected to know his rights without receiving notice of the impending termination of his leave and the consequences thereof. The avoidable error was keeping Russell in the dark about so crucial a property interest as retirement benefits.
 
 
 32
 The majority argues that "Russell makes no claim that he discovered the permanent status of his disability so close to learning of the December 18 termination that he had no time to apply." The issue, however, is whether the State should have given Russell notice, not whether Russell would have applied, or would have had time to apply, but for the absence of notice. In any case, a letter to a state employee stating that valuable rights will be terminated unless that employee acts promptly will likely spur that employee to action.
 
 
 33
 I note also that this case involves the termination of an open-ended, discretionary medical leave. Although the State was under no obligation to grant Russell a discretionary leave beyond one year, once the State granted the leave without stating at the outset when or if it would end, the State could not terminate it--and the associated opportunity to apply for benefits--without prior notice.
 
 
 34
 Finally, the majority's analysis of the third Mathews factor, concerning the Government's interest, shows insensitivity to the worker-protective statutory scheme. The majority claims that New York has an interest in discouraging employees from taking full advantage of medical leave status. Given that the statutes at issue grant certain employees medical leave and entitle them to apply for disability retirement benefits, I do not see how the majority divines a state "interest"--really, an off-the-books policy--of discouraging employees from availing themselves of statutory leave. In any event, the action of the State in giving no advance notice of termination surely went far beyond any reasonable "discouragement." There is nothing in the record to suggest that Russell had taken any improper advantage of his right to medical leave status.
 
 
 35
 The irony of this case is that Russell did receive post-termination notice, which obviously did him no service whatsoever. It would have put no conceivably greater burden on the responsible state officials to have sent notice before termination, rather than after.
 
 
 36
 I would reverse and remand with instructions to restore Russell to medical leave and to consider his application for disability retirement benefits on the merits.
 
 
 
 [1]
 CSL Section 71 provides in pertinent part:
 Where an employee has been separated from the service by reason of a disability resulting from occupational injury or disease as defined in the workmen's compensation law, he shall be entitled to a leave of absence for at least one year, unless his disability is of such a nature as to permanently incapacitate him for the performance of the duties of his position. Such employee may, within one year after the termination of such disability, make application to the civil service department or municipal commission having jurisdiction over the position last held by such employee for a medical examination to be conducted by a medical officer selected for that purpose by such department or commission. If, upon such medical examination, such medical officer shall certify that such person is physically and mentally fit to perform the duties of his former position, he shall be reinstated to his former position, if vacant, or to a vacancy in a similar position or a position in a lower grade in the same occupational field, or to a vacant position for which he was eligible for transfer.
 (footnote omitted).
 
 
 [2]
 Prior to a 1989 amendment, RSSL Section 605 provided in pertinent part:
 a. Application for a disability retirement allowance for a member may be made by:
 
 
 [1]
 Such member, or
 
 
 [2]
 The head of the department in which such member is employed
 b. At the time of the filing of an application pursuant to this section, the member must:
 
 
 [1]
 Have at least ten years of total service credit, and
 
 
 [2]
 The application must be filed within three months from the last date the member was being paid on the payroll or within twelve months of the last date he was being paid on the payroll provided he was on a leave of absence for medical reasons without pay during such twelve month period provided the member was disabled at the time he ceased being paid
 
 
 [3]
 Provided, however, if the retirement system determines that such member was physically or mentally incapacitated for performance of gainful employment as the natural and proximate result of an accident not caused by his own willful negligence sustained in the performance of his duties in active service while actually a member of the retirement system the requirement that the member should have ten years of credited service shall be inapplicable
 
 
 [1]
 For the sake of argument, I accept the State's contention that, under New York law, this error cannot be grounds for an estoppel claim against the State