Bernice ORTIZ, Plaintiff,

v.

Edward V. REGAN, as Comptroller of the State of New York and as Trustee of the New York State and Local Retirement Systems, the New York State and Local Retirement Systems, Gregory O. Childs, personally and as Director, Retirement Benefits of the New York State and Local Retirement Systems, and Jane A. O'Connor, personally and as Assistant Director of the Retirement Benefits Bureau of the New York State and Local Retirement Systems, Defendants.

No. 90 Civ. 1609 (MBM).

United States District Court,
S.D. New York.

Oct. 22, 1990.

Anthony Feldmesser, Bronx Legal Services, Office of the Elderly, Bronx, N.Y., of counsel; Jonathan A. Weiss, Legal Services for the Elderly, New York City, for plaintiff.

Robert Abrams, Atty. Gen., New York City (Clement J. Colucci, Asst. Atty. Gen., of counsel), for defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Bernice Ortiz is a New York State and Local Retirement Systems pensioner. In this action, under 42 U.S.C. § 1983, she claims, *inter alia,* that by arbitrarily cutting off and later reducing her monthly retirement benefits without notice and an opportunity to challenge the action, defendants New York State and Local Retirement Systems (NYSLRS) and Edward V. Regan have deprived and continue to deprive her of property without due process of law. The complaint also alleges that the failure of defendants to adopt rules and regulations to prevent wrongful

termination or reduction of retirement benefits has deprived and will continue to deprive plaintiff of property without due process of law. After an initial cutoff of five months, plaintiff's retirement benefits were restored, albeit at a lower rate than that to which she believes she is entitled. Defendants move to dismiss her claims on the ground that the availability of administrative review for four months following the resumption of benefits satisfies the requirements of due process. For the reasons set forth below, defendants' motion is denied.

## I.

The following facts are based on the verified complaint. Plaintiff's retirement became effective on May 27, 1989, and she received her first retirement check on or about June 28, 1989. That payment was to be the first of a series of payments, constituting an advance on retirement benefits ("advance retirement benefits"), to be paid monthly pending the final calculation of her regular retirement benefit. The first check was accompanied by the following letter from NYSLRS:

June 28, 1989

Bernice Ortiz
1237 Boynton Avenue # 2r
Bronx NY 10472
Dear Pensioner:
We enclose our check in the amount of $296.00 representing a partial advance of your retirement allowance. You will receive this amount monthly until your normal retirement allowance has been calculated.

This advance payment is to provide you with some income during the period required to compile all the data necessary to accurately compute your allowance. No deductions are taken from partial payments. Once the final calculations have been completed you will receive your first regular retirement check which will be retroactive and include all monies due you from your effective date of retirement, less of course, the amount of advance payments you receive.

We will make this final calculation as soon as possible.

Sincerely,
/s/ Philip C. Bazicki
Philip C. Bazicki
Employees' Retirement System Examiner VI

Verified Complaint, Exh. E.

Ortiz received a second advance retirement benefit check, dated August 1, 1989, in the amount of $296.00. The complaint alleges that without affording her a hearing, without notifying her of any reasons, and without notifying her of its contemplated action, defendant NYSLRS simply ceased payment of the monthly advance retirement benefits. This complete cutoff of advance retirement benefits lasted for nearly six months until February 9, 1990, when Ortiz received a third advance retirement check, again in the amount of $296.00.

On February 15, 1990, Ortiz received a form letter from NYSLRS, dated February 12, 1990, informing her that a "final calculation" of her retirement allowance had been completed and that based on her "final average salary" and the number of years of "service credit," her maximum monthly regular benefit amount would be $294.99. This letter (the "final calculation letter") was accompanied by check in the amount of $1519.50 representing "the amount payable from your effective date of retirement 05/27/89 through 01/31/90 less $888.00 previously advanced." Verified Complaint, Exh. P. Notably for purposes of this litigation, the final calculation letter did not show the date of birth on which the benefit amount was based or the available procedures for challenging any information used to calculate a retiree's monthly benefit.

In the period between about September 1, 1989, when she expected to receive her third advance retirement check, and mid-February 1990, when payments resumed and she received the final calculation letter, plaintiff frantically attempted to first, secure some explanation of the cutoff and, second, comply with confusing and contradictory requests for documentation from NYSLRS. During this five-month period, the chronology of which is outlined below,

Ortiz did not receive the monthly advance retirement payments previously promised.

After failing to receive the expected September 1, 1989 advance retirement check, Ortiz telephoned NYSLRS' Albany office and, after being given (as she wrote later) the "run-around," she was informed for the first time, but without explanation, that her payments had been intentionally stopped. Ortiz then wrote a letter dated September 27, 1989 to Peter Buckley, Director of Members' Services of NYSLRS, stating that she never received any official notification of the cutoff and was unaware of any reason that would justify it, and that the situation was hurting her health.

In response, Ortiz received a letter dated October 3, 1989, from defendant Gregory O. Childs informing her for the first time that NYSLRS had found a discrepancy regarding her date of birth and was conducting an "investigation."

The discrepancy described by Childs arose because Ortiz's application for membership with NYSLRS in 1978 listed her date of birth as September 10, 1932. Ortiz subsequently learned in conversations with relatives that her correct date of birth was November 7, 1925. Prior to her retirement, Ortiz sought to update her retirement records. At that time, NYSLRS notified Ortiz by letter that there was a discrepancy between the updated information and her application and requested that she submit *one* original document to verify her birth date. Verified Complaint, Exh. A. Ortiz complied with this request. In a letter dated January 3, 1989, NYSLRS informed her that their records were now updated to reflect November 7, 1925 as her "correct date of birth." Verified Complaint, Exhibit C. After receiving her retirement application, NYSLRS sent Ortiz an acknowledgement and noted that her "date of birth has been verified as November 7, 1925." Verified Complaint, Exh. D. Therefore, when Ortiz began her retirement, she was, quite understandably, under the impression that NYSLRS had accepted November 7, 1925 as her birth date.

Childs apparently was unaware that NYSLRS had resolved the issue of Ortiz's birth date prior to her retirement, because his letter requested, in general terms, "any additional information that might help resolve the situation." From Child's letter, Ortiz also became aware, for the first time, that NYSLRS had received a letter dated August 28, 1989, purportedly sent by her, stating that her birth date was September 10, 1932. Ortiz alleges that this letter is what prompted NYSLRS to suspend payments on September 1, 1989.

In response to Childs' request for "additional information," Ortiz submitted an affidavit dated October 30, 1989 addressing all of Childs' points and reiterating that her date of birth was November 7, 1925. In a cover letter, Ortiz, through counsel, noted that this date of birth had already been confirmed by NYSLRS, and that she suspected any new discrepancy was due to the fraudulent actions of some third party. Ortiz requested immediate reinstatement of her benefits or, in the alternative, an "immediate hearing on the merits of the termination order." Additionally, Ortiz expressed bewilderment regarding the August 28, 1989 letter and requested that NYSLRS provide her with a copy.[1] Verified Complaint, Exh. H.

Ortiz's letter and affidavit was answered by yet another person, defendant Jane O'Connor, in a letter dated November 13, 1989. Ortiz was now informed, for the first time, that "two original documents" were required to verify her date of birth. Noting that an original birth certificate had already been submitted, O'Connor requested that Ortiz submit either "a school record or census record" to satisfy the requirement of a second document. After a telephone conversation with O'Connor, Ortiz resubmitted a copy of her birth certificate and also provided a Certificate of Baptism

---

1. When officials at NYSLRS failed to comply with this request, Ortiz repeated her request in a letter dated December 21, 1989 to defendant O'Connor. A copy of the August 28, 1989 letter was finally provided on January 5, 1990. Ortiz alleges that this letter is a forgery sent by her landlord to harass her.

showing her birth date to be November 7, 1925.

In response, O'Connor sent Ortiz another letter, dated December 8, 1989, in which she rejected the Certificate of Baptism because "the original date of birth on the certificate was September 10, 1932." In fact, the date of birth on the certificate is November 7, 1925. This was acknowledged in a third letter from O'Connor dated January 5, 1990. However, O'Connor then claimed that the Certificate of Baptism was being rejected because the records of the Church that had issued the Certificate had been changed to reflect a court authorized change of name in 1988.

In O'Connor's December 8, 1989 letter, Ortiz was also presented, apparently for the first time, with a list of eight kinds of documentation that would be acceptable for proving the date of birth.

On February 9, 1990, Ortiz finally received her third advance retirement benefit check.

On February 10, 1990, Ortiz received from O'Connor a new retirement application along with a letter dated February 7, 1990, which, without referring at all to any prior correspondence, notified her that "[d]ocumentary evidence to verify your date of birth is required...." The letter appears to be a form letter sent to new retirement applicants and was not even signed by O'Connor.

Thus, the correspondence between NYSLRS and Ortiz discloses that NYSLRS asked Ortiz at various times to provide the following to verify her birth date: one document, "any additional information," two original documents of which school or census records are acceptable, two original documents from a list of eight items, and finally "documentary evidence."

On or about February 15, 1990, Ortiz received the final calculation form letter, mentioned above, along with her first regular retirement check.

Ortiz is currently receiving a monthly benefit check of $294.99, which according to defendants' brief, is based on a Septem-ber 10, 1932 date of birth. Ortiz filed this action on March 9, 1990.

## II.

The complaint alleges that the defendants' actions deprived plaintiff of property without due process of law. To state a claim under § 1983, a complaint must allege that the defendants have deprived plaintiff of a right secured by the Constitution or laws of the United States and that such deprivation was committed by persons acting under color of state law. *Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir.1987).

█ There is little question that plaintiff's right to continued pension payments is a property right protected by the due process clause of the Fourteenth Amendment. *See, e.g., Russell v. Dunston*, 896 F.2d 664, 669 (2d Cir.1990) (holding that state disability retirement benefits are a constitutionally protected property interest); *Winston v. City of New York*, 759 F.2d 242, 247–49 (2d Cir.1985) (holding that municipal employee retirement benefits are protected); *Weaver v. New York City Employees' Retirement System*, 717 F.Supp. 1039, 1043 (S.D.N.Y.1989) (same). This conclusion is fully supported by state law. Article 5, section 7 of the New York State Constitution provides that:

> "[M]embership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be impaired."

*See also Weaver*, 717 F.Supp. at 1043 and cases cited therein.

█ Ortiz has the same constitutionally protected interest in the monthly advance retirement payments as she would in regular retirement benefits. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *S & D Maintenance Co. Inc. v. Goldin*, 844 F.2d 962, 965–66 (2d Cir. 1988) (quoting from *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701,

2709, 33 L.Ed.2d 548 (1972)) (emphasis added).

The June 28, 1989 letter from NYSLRS that accompanied the first benefit check informed Ortiz that she would receive advances "monthly until ... [the] normal retirement allowance has been calculated" and that the payments were being made "to provide ... [her] with some income during the period required to compile all the data necessary to accurately compute" her regular allowance. This letter and the state constitutional guarantees extended to retirement "benefits" in general are sufficient to create a "legitimate claim of entitlement" required to provide constitutional protection to the monthly advance retirement benefits.

### III.

The sole question for purposes of this motion to dismiss is whether Ortiz has stated a claim for a deprivation of property without due process of law. Defendants' motion should be granted only when proof of the facts alleged in the complaint clearly would not support the plaintiff's claim for relief. *Costello*, 811 F.2d at 784. Moreover, the material allegations in the complaint must be accepted as true. *Id.*

The gravamen of Ortiz's § 1983 claim is that the defendants deprived and continue to deprive her of property without due process of law by terminating advance retirement payments in September 1989 and later restoring those regular benefits at a reduced level without any meaningful notice or opportunity to rebut the facts upon which the defendants acted. As relief for these deprivations, Ortiz seeks an award of past retirement benefits not received because of the use of an incorrect birth date, and injunctive relief ordering defendants to pay in the future the proper amount of benefits.

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the natures of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (quoting from *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950)). "'[T]he root requirement' of the Due Process Clause ... [is] 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original).

In *Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970), the Supreme Court held that a full evidentiary hearing was required prior to a cutoff of welfare benefits. Subsequently, the *Goldberg* requirement of a full evidentiary hearing prior to termination has been narrowed to apply only to aid similar to welfare benefits, which constitute the "very means by which to live." *Goldberg*, 397 U.S. at 264, 90 S.Ct. at 1018. In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court established three factors to consider in evaluating the adequacy of an administrative procedure under the due process clause.[2] Utilizing that test, the *Mathews* Court held that the existing administrative procedures for terminating social security disability benefits, including pretermination notice to the recipient, an opportunity to respond in writing prior to termination, and a post-termination evidentiary hearing, satisfied due process. 424 U.S. at 347, 96 S.Ct. at 908. In essence, *Mathews* held that the procedures required to satisfy due process before a cutoff of benefits other than welfare or other benefits constituting the "very means to live" could be less than a full evidentiary hearing. In subsequent cases,

---

**2.** "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903.

the Supreme Court has reiterated that absent exceptional circumstances, a person is entitled to some protective procedures, though not necessarily a full evidentiary hearing, before being deprived of liberty or property. *See, e.g., Zinermon v. Burch,* — U.S. —, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990) and cases cited therein.

█ Ortiz was entitled to meaningful notice and a chance to be heard before the termination of her advance retirement benefits. The type of "hearing, though necessary, need not be elaborate." *Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495. Although the pretermination hearing to which Ortiz was entitled did not have to "definitively resolve the propriety" of the cutoff of her retirement benefits, it should have been sufficient to provide at least "an initial check against mistaken decisions." *Id.* "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Id.*

It is unnecessary to delineate the exact scope of the notice and hearing to which Ortiz was entitled prior to the cutoff in her retirement benefits. If the allegations in the complaint are true, it is apparent that she did not receive any advance opportunity to challenge the cutoff. She got far less than due process; she got virtually no process, and the process she did get was, as she put it, a run-around. Ortiz retired effective May 27, 1989 and began receiving monthly advance retirement payments the following month. As she was told in the letter accompanying the first check, the advance payments were specifically designed to provide Ortiz with "some income during the period required to compile all the data necessary to accurately compute" her regular benefit. These benefits were unilaterally cut off when receipt of a letter purportedly sent by Ortiz led officials of NYSLRS to rediscover a discrepancy in their records—notably, a discrepancy which had already been resolved prior to Ortiz's retirement. See p. 1257, *supra.* Ortiz was not informed about this new discrepancy or given any opportunity to challenge the authenticity of the letter. Her benefits were simply stopped pending an "investigation." In fact, NYSLRS did not even inform her of the cutoff immediately after it acted. Ortiz was not told the reason for the cutoff until one month later, after she took the initiative to ask for an explanation of why an expected payment never arrived.

"[A]bsent 'the necessity of quick action by the State or the impracticality of providing any predeprivation process,' a post-deprivation hearing ... [alone is] inadequate." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) (quoting *Parratt v. Taylor,* 451 U.S. 527, 539, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981). Defendants have shown no impracticality or exigent circumstances to justify denying some form of notice prior to cutting off benefits in the case of a possible discrepancy in a retiree's file. Nor do defendants allege that the complete cutoff of benefits was a "random and unauthorized act" for which post-deprivation remedies alone will satisfy due process. *Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916. *See also Hudson v. Palmer,* 468 U.S. 517, 534, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984) (proper inquiry to determine if post-deprivation remedies alone satisfy due process is "whether the state is in a position to provide for predeprivation process").

█ There is present here no government interest that might support a complete cutoff of monthly advance retirement benefits without providing *any* advance notice and an opportunity to rebut the justification for the cutoff. Ortiz's entitlement to at least some retirement benefits was never in doubt. The monthly payments were advances pending a final calculation of benefits; any amounts determined after a hearing to have been an overpayment could easily be recouped from future regular payments. This possibility was reflected in the June 28, 1989 letter which explicitly stated that the first regular retirement check would consist of the amount to which she was entitled from her retirement date less the total of advance payments. Here, it bears mention that in Or-

tiz's case, the difference between the monthly advance retirement payments which were stopped, $296.00, and the benefit which the state finally calculated using the 1932 date of birth, $294.99, amounted to only $1.01 per month. At that rate, it would take nearly 25 years of overpayment to justify even a one-month cutoff. If the allegations in the complaint are true, the termination of advance retirement payments without any pretermination notice and hearing was a deprivation of property without due process of law. *See Knudson v. City of Ellensburg*, 832 F.2d 1142, 1148 (9th Cir.1987) (termination of disability medical benefits without any advance notice violated due process).

■ Defendants' motion to dismiss essentially ignores the termination of advance retirement benefits in September 1989, and frames plaintiff's claim as one alleging solely a deprivation of property without due process in improperly calculating the regular retirement benefit. Defendants contend that even assuming the final calculation of benefits in February 1990 was incorrect and therefore a deprivation of property, the availability of a post-deprivation hearing, pursuant to § 74(d) of the New York State Retirement and Social Security Law,[3] to contest this error was sufficient to satisfy due process. Defendants rely principally on *Campo v. New York City Employees' Retirement System*, 843 F.2d 96, 102 (2d Cir.), *cert. denied*, 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988), which held that the availability of judicial review of administrative actions under Article 78 of the New York Civil Practice Law and Rules was sufficient to satisfy due process for a plaintiff who claimed that an agency erroneously denied survivor's retirement benefits. In further reliance upon *Campo*, 843 F.2d at 102 n. 6, defendants claim that it is irrelevant that the four-

month time period in which to utilize the § 74(d) procedures has now expired. Rather, they claim that the mere availability of these procedures at the time of the final calculation satisfied due process.

Defendants' motion fails for several reasons. First, as discussed above, the complaint alleges a violation of plaintiff's right to procedural due process beginning in September 1989. It is irrelevant whether the hearing allegedly available under § 74(d) to contest the incorrect *final* calculation of benefits satisfied the requirement of due process. Defendants admit that the § 74(d) hearing became relevant to Ortiz only when her final calculation was determined on February 12, 1990. Reply Memorandum in Further Support of Defendants' Motion to Dismiss the Complaint at 3. Therefore, this argument does not address the plaintiff's contention that the cutoff of advance retirement benefits in September 1989 without any prior notice or hearing violated her rights to procedural due process.

*Campo* addressed only the adequacy of post-deprivation procedures in the case of a termination of benefits. The Court specifically noted that under the facts before it "no pre-deprivation hearing was needed or could have taken place." 843 F.2d at 100. Moreover, the Supreme Court has subsequently limited the application of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), upon which the *Campo* panel based its holding, to those situations where predeprivation process would be impossible or unduly burdensome in proportion to the interest at stake. *Zinermon v. Burch*, —— U.S. ——, 110 S.Ct. 975, 987–90, 108 L.Ed.2d 100 (1990). As discussed above, Ortiz was entitled to at least minimal notice and opportunity to respond prior to the decision by officials at NYSLRS to

---

**3.** Section 74(d) of the New York State Retirement & Social Security Law provides, *inter alia:*
   "At any time within four months after the mailing of a ... [notice of the comptroller's determination of an application for a retirement allowance], the applicant or his counsel may serve a written demand upon the comptroller for a hearing and redetermination of such application...."

There is a dispute between the parties as to whether the § 74(d) procedure, which only applies to an "applicant," is even applicable to Mrs. Ortiz, who was granted retirement in May 1989. Because of our finding that Mrs. Ortiz was not given meaningful notice of the opportunity to a hearing, it is unnecessary to decide the scope of § 74(d).

terminate her advance retirement benefits. Therefore, *Campo* is inapposite to the issue of whether the unilateral cutoff of benefits in September 1989 violated due process.

In addition, even if the availability of a § 74(d) hearing normally would satisfy due process in the case of an erroneous final calculation of the regular benefit amount, there is substantial doubt as to whether the final calculation letter sent by NYSLRS constituted sufficient "notice reasonably calculated to apprise [Ortiz] that [she] had an opportunity to rebut defendants' finding." *Weaver v. New York City Employees' Retirement System*, 717 F.Supp. 1039, 1046 (S.D.N.Y.1989).

▪ Notice and an opportunity to be heard are core components of due process whenever there is a final deprivation of a property right. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections") (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)); *Weaver*, 717 F.Supp. at 1046.

▪ In *Memphis Light*, the Supreme Court found that a notice, although adequate to apprise individuals of the threat of termination of utility service, was not "reasonably calculated to inform them of the availability of an opportunity to present their objections" to the bills, because it did not properly advise the customers of the availability of a procedure for protesting the proposed termination. 436 U.S. at 14, 98 S.Ct. at 1562. In *Weaver*, this court held that the notice of a cutoff of retirement benefits after an administrative finding of incompetency violated due process, because it failed to "clearly state that claimant had an opportunity to be heard." 717 F.Supp. at 1045. In this case, the form of final calculation letter sent to Ortiz

failed to provide her with any hint that she had an opportunity to rebut the findings in any type of hearing. If, as defendants claim, the February 12, 1990 letter was notice of a final determination of the regular benefit amount, except to the extent § 74(d) afforded plaintiff an opportunity for administrative review, it was inadequate because it was not "reasonably calculated to inform [her] of an opportunity to present [her] objections." *Memphis Light*, 436 U.S. at 15, 98 S.Ct. at 1563.

Besides failing to inform Ortiz of the availability of an opportunity to challenge the calculation of benefits, the notice had another constitutional defect. The final calculation letter is a form letter which discloses to the retiree only the final benefit amount as well as the retiree's "final average salary" and number of years of "service credit." The notice fails to state the birth date upon which the benefit amount was calculated. A retiree would have no way of knowing at the time of the final calculation letter that the date being used might be incorrect.

Although Ortiz may have suspected, based upon her prior dealing with defendants, that her final benefit was based on the 1932 birth date, the typical retiree would be unaware if the final benefit amount was based on an incorrect birth date. Indeed, it was only "on information and belief" that plaintiff asserted in her complaint that the regular monthly benefit has been calculated based upon a birth date of September 10, 1932. The final calculation letter and first regular retirement check were received within a week after both the resumption of advance retirement benefits and the receipt of a letter from O'Connor enclosing a new retirement application and requesting, once again, documentary evidence as to date of birth—a request to which Ortiz apparently never had a chance to respond before receiving her first regular benefit. Therefore, Ortiz might have had some doubt from this confusing flow of documents in the middle of February 1990, whether defendants were sticking to the 1932 birth date or had in fact finally decided to accept her contention

and were basing their recalculation on some other perceived deficiency. Defendants admit in their brief that the final benefit calculation does in fact reflect the 1932 birth date. However, the final calculation letter itself, which defendants now claim started the running of the four-month limitations period, provided no clue as to how the dispute was finally resolved.

The final calculation letter fails to state the material information upon which the individual benefit is calculated and thus fails to inform the retiree if a challenge is appropriate. *See Gray Panthers v. Schweiker*, 652 F.2d 146, 169 (D.C.Cir.1980) (notice of denial of benefits failed to inform beneficiary of basis for denial); *Newman v. Board of Education of City School Dist. of New York*, 594 F.2d 299, 305 (2d Cir.1979) (procedural due process requires that, prior to post-suspension hearing, individual be fully apprised of adverse evidence in order "to demonstrate possible erroneous assumptions ... with respect to material facts").

Because the date of birth is not included on the final calculation letter, that letter may be insufficient even to inform a retiree that a final deprivation of property is about to occur. Where state action may effect a final deprivation of property, due process requires sufficient notice to enable affected persons to protect their interests. *See Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988) (because state's two-month period of limitations for filing claims against estates adversely affected protected property interests, due process requires actual notice of the time limit to all reasonably ascertainable creditors); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 2711, 77 L.Ed.2d 180 (1983) (actual notice, rather than publication notice, required to mortgagee whose interest in property may be adversely affected by county tax sale).

▉ Defendants claim in two footnotes to their Reply Brief that they had informed Ortiz's counsel of the availability of a hearing under § 74(d) prior to the expiration of the four month statute of limitations. Such assertions in a brief are not evidence of anything, *see, e.g.,* 10A A. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, § 2723 at p. 64 (1983 ed.); *Skyline Corp. v. NLRB*, 613 F.2d 1328, 1337 (5th Cir.1980), much less that Ortiz received meaningful notice of the availability of this procedure. Defendants have not submitted any affidavits specifying the nature of the notice actually provided. It is unclear if this notice specifically referred to the § 74(d) hearing as being appropriate to the plaintiff's situation, whether the notice was oral or written, and whether the notice either advised her how, or where to find out how, the hearing could be secured. Simply telling Ortiz or her lawyer that somehow, somewhere, a hearing was available would not have been meaningful notice. Indeed, it appears from a surpassingly arrogant submission by the Assistant Attorney General that that was precisely the nature of what he told Ortiz's lawyer: "... he complains that I did not do his legal work for him. I admit that." From the letters that have been submitted by counsel for both sides, there appears at least to be some dispute as to whether the content of the notice allegedly provided to plaintiff's counsel was sufficient to provide the plaintiff with a "meaningful opportunity to present [her] case." *Mathews*, 424 U.S. at 349, 96 S.Ct. at 909. Therefore, the defendants have failed to prove that they provided the plaintiff with the constitutionally required notice before depriving her of property.

Because the calculated benefit amount was final, defendants were required to provide notice sufficient to enable a retiree to determine whether a potential deprivation was occurring and what action had to be taken to challenge any erroneous information. In this case, accepting the facts alleged in the complaint, the notice provided by defendants was not constitutionally adequate.

### IV.

▉ For the foregoing reasons, defendants' motion to dismiss is denied. A conference will be held promptly to set a time-

table for deciding the merits of the case. Adequate provisional relief may also be appropriate, including the restoration of full benefits pending a constitutionally adequate hearing to determine the proper regular retirement benefit. I also note that any retroactive monetary relief may violate the Eleventh Amendment to the extent the relief ultimately must come from the state treasury. *Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974); *Russell v. Dunston,* 896 F.2d 664, 668–69 (2d Cir.1990). This bar does not apply to any prospective relief. *Id.* Defendants have failed even to raise this potentially meritorious defense to some of the relief sought. *See, e.g., Fitzpatrick v. Bitzer,* 519 F.2d 559 (2d Cir.1975), *rev'd on other grounds,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (Eleventh Amendment barred suit against Connecticut State Retirement Commission). However, the Eleventh Amendment is in the nature of a jurisdictional bar and is therefore properly raised by the Court on its own motion. *Edelman,* 415 U.S. at 678, 94 S.Ct. at 1363.

SO ORDERED.