**Michael RUBINBERG, Francis Lee and Frank Coulton, Plaintiffs,**

**v.**

**HYDRONIC FABRICATIONS, INC., Irwin P. Mattes, Joseph Sacks and Morton E. Cytryn, Defendants.**

**No. CV–89–2583 (ADS).**

United States District Court, E.D. New York.

Oct. 1, 1991.

**58**

Walker & Hill (Stephen R. Hill, of counsel), New York City, for plaintiffs.

David E. Worby, P.C. (Robert A. Korren, of counsel), White Plains, N.Y., for defendant Morton E. Cytryn.

Speno Goldman Goldberg Steingart & Penn, P.C. (Peter Sullivan, of counsel), Mineola, N.Y., for defendants Joseph Sacks and Irwin P. Mattes.

## OPINION AND ORDER

SPATT, District Judge.

This action arises out of a dispute concerning the alleged omissions and misrepresentations made by the defendants in connection with the sale of all of the issued and outstanding shares of common stock of a close corporation, Hydronic Fabrications, Inc. Based on violations of the federal securities laws as well as pendent state law claims, the complaint alleges that the defendants failed to disclose the true financial condition of the business at the time of closing, which ultimately led the plaintiffs to file for bankruptcy protection.

Before the Court at this time is the defendants' motion for summary judgment dismissing the complaint, and granting judgment on their counterclaims. The defendants also seek sanctions pursuant to Fed.R.Civ.P. 11.

For the reasons that follow, the Court grants the motion of the defendants for summary judgment dismissing the complaint, and denies the defendants' motion for summary judgment on their counterclaims and for sanctions.

## FACTUAL BACKGROUND

The following facts are undisputed, except where otherwise noted.

Defendant Hydronic Fabrications, Inc. ("Hydronic"), organized and existing under the laws of New York, maintained its principal office in Oceanside, Long Island, New York. Hydronic was in the business of manufacturing and installing fabricated pipe for industrial use.

Prior to October 1988, the defendants Irwin P. Mattes ("Mattes") and Joseph Sacks ("Sacks"), each owned fifty shares of Hydronic, which together constituted 100% of the then-outstanding shares of stock.

Plaintiff Michael Rubinberg ("Rubinberg"), was also in the business of industrial pipe fabrication since approximately 1962. For some uncertain time period, Rubinberg and defendants Sacks and Mattes conducted business together in a

partnership known as "Rubicon", which operated out of the Hydronic facility. Rubinberg ultimately purchased the interests of Mattes and Sacks in the partnership approximately fifteen years ago.

Some time prior to October 1988, defendant Sacks, who managed Hydronic, became ill and was unable to generate the sales necessary to maintain Hydronic's profitability. In early 1988, Rubinberg expressed an interest in purchasing Hydronic, resulting in several meetings held between Rubinberg, Sacks and Mattes.

The plaintiffs allege that during the course of these meetings, the defendants Sacks, Mattes and Morton Cytryn ("Cytryn"), an accountant for Hydronic for approximately thirty years, made certain representations as to the financial viability of Hydronic. Specifically, the plaintiffs allege that the defendants falsely represented that the state sales tax liabilities were approximately $43,000, and that the inventory of the business was worth approximately $110,000.

After entering into negotiations, the parties reached an agreement, which was reduced to writing and signed by the parties on October 18, 1988 ("the Agreement"). Essentially, the Agreement provides in substance, as follows:

(1) Plaintiffs Rubinberg and Francis Lee ("Lee"), the purchasers, agreed to purchase all of the outstanding shares of Hydronic Fabrications, Inc. which would include all right, title and interest to the inventory of the corporation and its accounts receivables, miscellaneous equipment and furnishings, for an aggregate purchase price of $135,000;

(2) The plaintiffs would pay only the sum of $43,512 of the outstanding sales tax obligations of the corporation and would hold harmless the individual defendants (*i.e.*, sellers), should the sellers be obligated to pay any portion of that amount, and agreed to pay reasonable attorney's fees should the sellers be sued in regard to such matter;

(3) The plaintiffs agreed to pay any and all additional sales tax obligations of the corporation, over and above the sum of $43,512 shown on the corporate books, and agreed to hold harmless and indemnify the defendants for that amount;

(4) The defendants agreed to hold harmless the plaintiffs for any financial obligation or payment resulting from any misstatement or omission in the contract of sale, with such additional obligation to be paid by the defendants to the purchasers on demand (Agreement ¶ 10); and,

(5) The defendants would hold harmless the purchasers from all obligations not otherwise provided for or shown on the financial statements of the corporation accruing prior to June 30, 1988, and only those obligations accruing after June 30, 1988 that were not accrued in the regular course of business (Agreement ¶ 10).

Pursuant to the Agreement, plaintiffs Rubinberg and Lee, each purchased 50% of the issued and outstanding shares of common stock of Hydronic. Thereafter, Rubinberg and Lee assigned a 25% interest in Hydronic to plaintiff Frank Coulton ("Coulton"). At the closing, Lee and Rubinberg paid the following consideration: two checks each in the sum of $1,406.25, and tendered two promissory notes, one payable to Sacks in the principal sum of $66,093.75 and one in the same sum payable to Mattes, for a total consideration paid at the time of closing of $135,000.

Each of the promissory notes provided for forty-seven equal monthly installments of $1,406.25 each, due on the 18th day of each month beginning on November 18, 1988 through and including October 18, 1992.

Once the plaintiffs were in possession and control of Hydronic, they allegedly discovered shortly thereafter that the aggregate liabilities of Hydronic had been grossly understated, particularly as to its state sales tax liabilities which were assessed in excess of $311,000. The plaintiffs also contend that it was later discovered that both Sacks and Mattes allegedly converted and diverted corporate assets and that there was an ongoing investigation of Hydronic by the New York State Sales Tax authorities.

On November 7, 1988, Hydronic filed a petition in bankruptcy in the Eastern District of New York under Chapter 11 seeking reorganization. The proceeding was later converted to a Chapter 7 liquidation.

On August 4, 1989, the plaintiffs commenced this securities fraud litigation, alleging the following six causes of action:

(1) Violation of section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10–5, against all defendants.

(2) Common-law fraud, against all defendants.

(3) Breach of contract, against defendants Sacks and Mattes.

(4) An accounting based upon breach of fiduciary duty, against defendants Sacks and Mattes.

(5) Breach of fiduciary duty, against defendants Sacks and Mattes.

(6) Accountant malpractice, against defendant Cytryn.

The defendants now move pursuant to Fed.R.Civ.P. 56 for summary judgment dismissing the complaint, and granting judgment on their counterclaims. The defendant Cytryn moves to dismiss the first, second and sixth causes of action. The defendants Mattes and Sacks move to dismiss claims one through five. All of the defendants also move for sanctions pursuant to Fed.R.Civ.P. 11.

### DISCUSSION

(a) *Summary Judgment Standard.*

■ Summary judgment may only be granted if it is demonstrated that there are no genuine issues of material fact for trial (*see* Fed.R.Civ.P. 56[c]; *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 571–73 [2d Cir.1991]). "[T]he judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial" (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d

202 [1986]). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion (*see Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 [2d Cir.1986], *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 [1987]). The moving party bears the initial burden of showing that the evidence demonstrates that there is an absence of genuine issues of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 [1986]; *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 [1970]).

■ Once a party moves for summary judgment, in order to avoid the granting of the motion, the burden shifts to the nonmovant to come forward with specific facts showing that a genuine material issue for trial exists (*see Anderson, supra,* 477 U.S. at p. 250, 106 S.Ct. at p. 2511; *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 [2d Cir.1989]). However, mere conclusory allegations or denials will not avail a party resisting summary judgment (*Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 [2d Cir.1990], *cert. denied,* — U.S. —, 111 S.Ct. 2041, 114 L.Ed.2d 125 [1991]; *Hauser v. Western Group Nursuries, Inc.,* 767 F.Supp. 475, 483–84 [S.D.N.Y.1991]; *Cassells v. University Hosp. at Stony Brook,* 740 F.Supp. 143, 146 [E.D.N.Y.1990]).

■ In opposing a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial.* If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party" (Fed.R.Civ.P. 56[e] [emphasis supplied]). Further, an affidavit by the non-movant's attorney which does not contain probative, material facts, or is not based on first-hand knowledge, is not entitled to any weight, and is not in compliance with Rule 56(e) (*see Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 [2d

Cir.1986]; *Wyler v. United States*, 725 F.2d 156, 160 [2d Cir.1983]).

(b) *Claims Under Section 10(b) and Rule 10b–5.*

Section 10(b) of the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78j(b), provides as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\*    \*    \*    \*    \*    \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule 10b–5, promulgated by the Securities and Exchange Commission in 1948 pursuant to section 10(b) (reprinted in 7 C.F.R. § 240.10b–5 [1990]), provides as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

■ To establish a claim under section 10(b) or Rule 10b–5, the plaintiffs must allege the following essential elements:

"(1) damage to plaintiff, (2) caused by reliance on defendant's misrepresentations or omissions of material facts, or on a scheme by defendant to defraud, (3) made with scienter (i.e., an intent to deceive, manipulate or defraud, or possibly with reckless disregard), (4) in connection with the purchase or sale of securities, and (5) furthered by defendant's use of the mails or any facility of a national securities exchange" (*Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1015 [2d Cir.1989]).

In sum, the plaintiff must plead that "in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused him injury" (*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 [2d Cir.1985]; *see also Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 961–62 [2d Cir.1987]; *A. Burton White, M.D., P.C. v. Beer*, 679 F.Supp. 207, 211–12 [E.D.N.Y.1988]).

■ When pleading a claim under section 10(b), the plaintiff must aver the alleged fraudulent acts with particularity as required by Fed.R.Civ.P. 9(b) (*see Luce v. Edelstein*, 802 F.2d 49, 54 [2d Cir.1986]). Although "knowledge" and "condition of mind" may be stated in general terms (*see* Fed.R.Civ.P. 9[b]), the circumstances surrounding the alleged fraud must be pled with particularity (*Farley v. Baird, Patrick & Co.*, 750 F.Supp. 1209, 1217 [S.D.N.Y.1990], *quoting Eickhorst v. American Completion & Dev. Corp.*, 706 F.Supp. 1087, 1091 [S.D.N.Y.1989]). The complaint must plead the factual basis giving rise to the required "strong inference" of fraud (*see Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 [2d Cir.1990]; *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 [2d Cir.1987], *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 [1988]).

## 62

Allegations of Fraud:

■ Although moving for summary judgment, the defendants' initial contention is that the complaint fails to satisfy the particularity requirement of Fed.R.Civ.P. 9(b), and thus they urge dismissal on that ground.

A review of the complaint, however, reveals the allegations that the defendants were aware of the false financial information conveyed to the plaintiffs at the time of the closing. The complaint states that among the misleading statements made were that the liabilities of Hydronic were less than $361,707, when in fact they were greater than that; that the assets had been diverted to corporations or other business entities; and that the sales tax liabilities would not exceed $43,000, when in fact they greatly exceeded that sum, and that Hydronic was in fact under an investigation conducted by the New York State Sales Tax division (*see* Complaint ¶ 23).

The complaint not only states the individuals who made the alleged misrepresentations, but also the dates and places as well (*see* Complaint ¶¶ 12–16). Insofar as a matter of *pleading* is concerned, the Court finds that the complaint adequately complies with Rule 9(b), and serves the purpose of putting the defendants on notice of their alleged fraudulent conduct (*see Ross v. Bolton*, 904 F.2d 819, 823 [2d Cir.1990]). In this Court's view, an ample factual basis for the alleged fraud has been pleaded. Accordingly, as a matter of pleading, Rule 9(b) has been satisfied.

"Due Diligence" Defense:

The defendants next contend that even assuming that the plaintiffs particularized the alleged fraud under Rule 9(b), they should have known of the insolvency of Hydronic had they exercised "due diligence". Specifically, the defendants allege that the plaintiffs' accountants had full access to the books and records of the corporation, an examination of which would have revealed its true financial condition— that is, that Hydronic was a "dying corpo-

ration", on the brink of insolvency. As such, since they knew or should have known of the company's true condition, the element of "reliance" under section 10(b) is absent.

In *Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011 (2d Cir.1989), the Second Circuit set forth the test in determining the "due diligence" defense, as follows:

"A showing of reliance may be defeated, however, where defendant establishes that plaintiff should have *discovered* the true facts.... *This has been called the due diligence test, to which, traditionally, a negligence standard has applied.* ... Since our decision in *Mallis v. Bankers Trust Co.*, 615 F.2d 68 (2d Cir.1980), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981), however, the degree of diligence to which plaintiffs are held has been diminished to minimal diligence. More specifically, a plaintiff bears only the burden of negating its own 'recklessness', once the issue of diligence is raised by defendant" (*id.* at pp. 1015–16 [citations omitted] [emphasis supplied]; *see also Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp.*, 801 F.2d 13, 22 [2d Cir.1986]).

Apparently not disputing the plaintiffs' allegations that the ultimate tax liabilities greatly exceeded what was disclosed at closing, the defendants argue that the plaintiffs, who are knowledgeable businessmen in the industry familiar with the operations of Hydronic, acted with "recklessness" in not inspecting the books or records of the company prior to closing.

In support of this motion, the defendants submit the affidavits of Mattes, Sacks, Cytryn [1], and attorneys Peter Sullivan, Esq. and Robert A. Korren, Esq. Significantly, the plaintiffs' only opposition filed in connection with this motion is a two-page affidavit by attorney Stephen R. Hill, Esq., a 3(g) statement and excerpts of deposition transcripts. To the extent that the affidavits of the attorneys set forth facts not

---

**1.** In this regard, the Court notes that the defendant Cytryn requests leave to amend his answer to include additional denials which were originally omitted (*see* Cytryn Aff't ¶¶ 2–3). There being no objection, that application is granted (*see* Fed.R.Civ.P. 15[a]).

based upon personal knowledge, which in this case is substantial, the Court cannot consider them for the purposes of this motion (*see* Fed.R.Civ.P. 56[e]; *Kamen v. American Tel. & Tel. Co., supra,* 791 F.2d at p. 1011). Although these attorneys' affidavits are effective to the extent of annexing deposition testimony, in this case such deposition testimony does not create any material triable issues.

■ At the outset, the Court notes that the plaintiffs were represented by legal counsel, as well as accountants, throughout the negotiation process and the closing of the purchase of the business.

It is unrefuted by the plaintiffs that Mattes informed Rubinberg and Lee at the closing that Hydronic was carrying approximately $42,000 as an accounts payable for sales taxes due to the state of New York. During the closing, both Lee and Rubinberg were advised that there was an outstanding state sales tax audit, and that Mattes and Sacks would indemnify Lee and Rubinberg for any *additional* amounts found to be due (*see* Mattes Aff't ¶ 5; Lee Deposition Tr. at pp. 48, 51, 55; Rubinberg Deposition Tr. at pp. 43, 52, 85). Before the closing, Rubinberg and Lee were both aware that the defendants retained an attorney who was representing them in the sales tax audit which had not yet been completed at the time of closing (*see id.*).

The undisputed evidence also shows that Rubinberg and Lee had full access to the books and records of Hydronic, all of which indicate accounts payable, taxes paid, taxes owed, inventory, contracts, the correspondence concerning the sales tax audit and the business expenses and salaries of Mattes and Sacks (Mattes Aff't ¶ 6; Lee Deposition Tr. at pp. 22, 23, 36, 39–45; Rubinberg Deposition Tr. at pp. 39–42, 68–70). These books and records were made available to the plaintiffs, who failed to avail themselves of the opportunity to inspect them despite their knowledge of the pending unresolved tax audit and the troubled financial status of the company.

In their brief in opposition, the plaintiffs contend that the defendant Cytryn routinely omitted debts from the company's records and, as such, any inspection of the books and records would have been futile. First, this statement does not create an issue of fact as to whether or not the plaintiffs attempted to inspect the books and records—admittedly they did not. Second, such unsupported assertions by counsel contained in a brief "are not evidence of anything" on a motion for summary judgment (*Ortiz v. Regan,* 749 F.Supp. 1254, 1263 [S.D.N.Y.1990]).

Apart from their knowledge of the pending tax audit prior to the closing, the plaintiffs also dispatched several individuals to specifically count and review all inventory prior to entering the final deal, and also just before the closing itself (Mattes Aff't ¶ 6; Lee Deposition Tr. at pp. 82–85, 90; Rubinberg Deposition Tr. at pp. 80, 81). Thus, to the extent that the plaintiffs claim that they relied on a misrepresentation or omission as to the value of the inventory, that claim is without merit. The plaintiffs do not dispute that they had full access to and did inspect the inventory.

The deposition testimony of Lee that his intention in purchasing the business was "to try to turn it around" (Lee Deposition Tr. at p. 139), also makes it clear that he was aware of Hydronic's troubled financial condition, especially in light of his knowledge of the pending tax audit (Lee Deposition Tr. at pp. 48, 51, 55). As the Second Circuit stated, "[n]ot every 'risky' investment rises to the level of fraud because the risk is insufficiently disclosed" (*Denny v. Barber,* 576 F.2d 465, 469 [2d Cir.1978]).

■ In addition, as the defendants concede, the contract of sale expressly provides that if there is any misrepresentation or omission in connection with the purchase of the business, the sellers, namely, Sacks and Mattes, agree to indemnify Lee and Rubinberg for any financial obligation arising therefrom (*see* Agreement dated October 18, 1988, ¶ 10); *see also* Mattes Deposition Tr. at p. 27). As the defendants candidly admit, any failure to comply with paragraph 10 of the Agreement would result in an actionable breach of contract. However, it is well settled that a breach of contract alone does not give rise to liability

under the federal securities laws (*see, e.g., Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 445 [2d Cir.1971]; *Bischoff v. G.K. Scott & Co.,* 687 F.Supp. 746, 749 [E.D.N.Y.1986]; *cf. Marcella v. ARP Films, Inc.,* 778 F.2d 112, 119 [2d Cir.1985] ["[a] simple failure to perform promised acts is a breach of contract not fraud" under the common law of New York]).

Finally, to the extent that the plaintiffs rely on the defendants' status as fiduciaries vis-a-vis their alleged misconduct and conversion of corporate funds, section 10(b) does not afford relief for corporate mismanagement or breach of fiduciary duty (*Santa Fe Indus., Inc. v. Green,* 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 [1977]).

Based upon the foregoing, the undisputed record makes it abundantly clear that the plaintiffs did not rely on any alleged misrepresentations or omissions with respect to the sale of Hydronics. The defendants have also demonstrated that no genuine issue of material fact exists so as to negate the plaintiffs' negligence and/or recklessness in connection with the "lack of due diligence" defense. Since the Court finds as a matter of law that the plaintiffs did not rely on any alleged misrepresentations or omissions because of their recklessness in not exercising due diligence, the Court need not address whether the plaintiffs established that such alleged misrepresentations or omissions were "material" or "caused" the claimed injury, *i.e.,* bankruptcy.

Accordingly, there being no genuine issues of material fact for trial, the motion of the defendants for summary judgment dismissing the first cause of action, is granted pursuant to Fed.R.Civ.P. 56(b).

### (c) Pendent State–Law Claims:

The defendants also seek the dismissal of the remaining pendent state-law claims set forth in the second through sixth causes of action.

■ With the dismissal of the only federal claim in this action, namely, the first cause of action alleging securities fraud under section 10(b), the Court declines to exercise pendent jurisdiction over the remaining state-law claims (*see United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 [1966] ["if the federal claims are dismissed before trial ... the state claims should be dismissed as well"]), especially since pre-trial preparation has apparently been devoted almost exclusively to the federal claim, and the remaining state-law claims of fraud, breach of contract, breach of fiduciary duty and accountant's liability involve fundamental issues of state law (*see Mayer v. Oil Field Sys. Corp.,* 803 F.2d 749, 756–57 [2d Cir. 1986]).[2]

Accordingly, the state-law claims asserted in the second through sixth causes of action are dismissed pursuant to Fed. R.Civ.P. 12(b)(1), without prejudice.

### (d) Counterclaims:

The defendants Sacks and Mattei also seek summary judgment pursuant to Fed. R.Civ.P. 56(a) on their state-law counterclaims for breach of the Agreement relating to the reimbursement of sales taxes paid and based upon the plaintiffs' alleged default under the promissory notes.

■ Although it appears that these counterclaims are compulsory rather than permissive (*see* Fed.R.Civ.P. 13[a]), compulsory counterclaims may nonetheless be dismissed where, as here, the initial claim giving rise to federal jurisdiction is dismissed (*see Scott v. Long Island Savings Bank, FSB,* 937 F.2d 738, 742–43 [2d Cir. 1991]; *Mirkin, Barre, Saltzstein, Gordon, Hermann & Kreisberg v. Noto,* 94 F.R.D. 184, 188–90 [E.D.N.Y.1982]). The Court may dismiss an action for lack of subject matter jurisdiction "whenever it appears ... that the court lacks jurisdiction" (Fed. R.Civ.P. 12[h][3]).

Accordingly, the counterclaims of the defendants Mattes and Sacks are dismissed

**2.** Congress recently codified the doctrine of pendent jurisdiction, now called "supplemental" jurisdiction, which is inapplicable here, since it applies only to actions commenced on or after December 1, 1990 (*see* 28 U.S.C. § 1367).

pursuant to Fed.R.Civ.P. 12(b)(1), without prejudice.

**(e) *Rule 11 Sanctions.***

Rule 11 of the Federal Rules of Civil Procedure provides, in relevant part, that, "The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction...."

Put simply, a signature placed on a paper filed with the Federal Court, "certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well-grounded in both, and is acting without any improper motive" (*Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* — U.S. —, 111 S.Ct. 922, 929, 112 L.Ed.2d 1140 [1991]).

■ The imposition of sanctions is mandated when the Court finds one of the following situations exist:

"(1) a reasonable inquiry into the basis for a pleading has not been made; (2) under existing precedents there is no chance of success; and (3) no reasonable argument has been advanced to extend, modify or reverse the law as it stands" (*International Shipping Co., S.A. v. Hydra Offshore, Inc.,* 875 F.2d 388, 390 [2d Cir.1989]).

(*See also Investors Ins. Co. of Am. v. Dorinco Reinsurance Co.,* 917 F.2d 100, 106 [2d Cir.1990]).

■ Sanctions should not be imposed so as to chill creativity or stifle enthusiasm or advocacy (*see Security Indus. Ass'n v. Clarke,* 898 F.2d 318, 322 [2d Cir.1990]; *see also McMahon v. Shearson/Am. Express, Inc.,* 896 F.2d 17, 22 [2d Cir.1990]). Once a violation is found to exist though, the Rule is mandatory and the Court *must* impose a sanction (*see O'Malley v. New York City Transit Auth.,* 896 F.2d 704, 709 [2d Cir.1990]).

■ In determining whether Rule 11 has been violated, the Court must apply the "objectively reasonable" test (*see Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253 [2d Cir.1985]).

■ Applying the objectively reasonable test to the facts of this case, the Court finds that the plaintiffs have not violated Rule 11. The complaint attempted to allege a cause of action based on violation of the federal securities laws. As stated above, the Court found as a matter of pleading that the complaint sufficiently particularized the alleged fraud. Even though ultimately dismissed by way of summary judgment, the Court does not find that a reasonable inquiry was not made or that under existing precedents there was no chance of success. The plaintiffs simply failed to sustain their burden to come forward on the motion for summary judgment. Additionally, although the Court did not rule on the merits of the remaining state-law claims, they do not appear to have been interposed for any improper purpose.

Accordingly, the motion for sanctions under Rule 11, is denied.

## CONCLUSION

Based upon the foregoing, the motion of the defendants for summary judgment pursuant to Fed.R.Civ.P. 56(b) dismissing the first cause of action, is granted. Having dismissed the only claim giving rise to federal jurisdiction, the Court declines to exercise pendent jurisdiction over the remaining state-law claims as well. Accordingly, the second, third, fourth, fifth and sixth causes

of action are dismissed, pursuant to Fed. R.Civ.P. 12(b)(1), without prejudice. Further, the motion of the defendants for summary judgment pursuant to Fed.R.Civ.P. 56(a) on their counterclaim, is denied, and those claims are dismissed pursuant to Fed. R.Civ.P. 12(b)(1), without prejudice. The motion of the defendants for sanctions pursuant to Fed.R.Civ.P. 11, is denied.

The Clerk of the Court is directed to enter final judgment, dismissing the complaint.

SO ORDERED.