**MARKOWITZ JEWELRY CO., INC., Plaintiff,**

v.

**CHAPAL/ZENRAY, INC., et ano. Defendants.**

**No. 97 CIV. 6910(LAK).**

United States District Court, S.D. New York.

Dec. 29, 1997.

---

Richard I. Samuel, Jill C. Greenwald, Cobrin, Gittes & Samuel, New York, NY, for Plaintiff.

Morton David Goldberg, Schwab, Goldberg, Price & Dannay, New York, NY, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff contends that defendants are infringing its allegedly copyrighted design for charms suitable for affixation to children's charm bracelets. The matter is before the Court on plaintiff's motion for a preliminary injunction and the motion of the individual defendant to dismiss the action as to him for lack of personal jurisdiction.

### Facts

*The Development of the Dispute*

Plaintiff Markowitz Jewelry Company, Inc. ("MJC") is in the business of creating, manufacturing and distributing jewelry charms. It refers here to nine certificates of registration obtained by it for various of its items

which, it says, have been displayed in the trade since 1988 and advertised since 1991.[1]

In October 1996, defendant Vivit Lervisit, president and sole shareholder of defendant Chapal Zenray, Inc. ("Zenray"), visited MJC's New York office. He advised Baruch Markowitz, plaintiff's vice president, that Zenray was selling copies of MJC copyrighted charms to certain stores, including Hills, Mercantile and Target.[2] The record is silent as to Markowitz's immediate reaction to this news. In any case, however, Lervisit and Markowitz on that occasion discussed the possibility of an arrangement pursuant to which MJC would permit Zenray to sell copies of MJC copyrighted charms.[3] As far as the record discloses, no agreement was reached. Shortly after the October 1996 meeting, representatives from Target, Mercantile and Hills confirmed to Markowitz that they were buying allegedly infringing charms from Zenray.[4]

*The Charms At Issue*

MJC's preliminary injunction motion is, to say the least, confusing as to precisely which articles allegedly are infringed. The moving affidavit attaches nine certificates of registration for works described as "jewelry charm" but does not include photographs of the deposit copies.[5] The declaration of plaintiff's expert attaches photocopies of what he describes as copyrighted MJC charms and of the allegedly infringing items,[6] but there is nothing in the declaration that permits the reader to connect the photocopies of the allegedly infringed charms with any of the certificates of registration. An unauthenticated letter attached to plaintiff's opening brief, however, contains photocopies of what the letter says are the deposits filed with registrations VA 651–593 and 595, which are said to correspond to MJC's style 939–2 and 940–2, respectively.[7] This is confirmed by copies certified by the Copyright Office and

1.  B. Markowitz Decl. ¶¶ 3–7 & Ex. A.

2.  *Id.* ¶ 12.

3.  *Id.* ¶ 8.

4.  *Id.* ¶¶ 13–14.

5.  B. Markowitz Decl. Ex. A.

6.  Monte Decl. ¶ 4 & Exs. A–B.

7.  Pl. Mem. Ex. D.

submitted with defendants' papers.[8] In consequence, these two are the only items for which plaintiff has produced *both* evidence of registration and a copy capable of being compared with the accused articles.

The charms in question consist of a birthstone mounted in a gold-colored setting designed to represent a boy or a girl. Each setting consists of four elements: (1) a bail, which is a piece that permits the charm to be suspended from a necklace or bracelet, mounted atop (2) a round frame to hold a stone representative of the head, mounted atop (3) a frame to hold a stone representative of a torso, and (4) four beaded chains, each consisting of three beads, affixed appropriately to represent arms and legs. The "boy" and "girl" figures are substantially identical except that the boy torso frame is elliptical while the girl torso frame is triangular.[9]

The overall appearance of the accused items is very similar to the allegedly infringed items. Each has the same components, and each component other than the bail is the same general shape. The accused items are about 40 percent larger than the allegedly infringed.[10] Putting aside such matters as the validity of MJC's copyrights and whether any otherwise copyrightable elements are functional and hence unprotectible, matters of no mean bearing on plaintiff's claim, there is little doubt as to the substantial similarity of the accusing and accused works. In view of the grounds on which this matter is decided, however, no further discussion is necessary at this time.

### Discussion

#### The Preliminary Injunction Motion

In order to obtain a preliminary injunction, MJC "must demonstrate (a) irreparable harm, and (b) either (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships tipping decidedly in its favor."[11] Irreparable injury is a *sine qua non*—if there is no irreparable injury, there can be no preliminary injunction.[12]

"When a plaintiff establishes a prima facie case of copyright infringement, irreparable harm is presumed."[13] But it is well established that undue delay in seeking a preliminary injunction may rebut this presumption. "An unreasonable delay suggests that the plaintiff may have acquiesced in the infringing activity, or that any harm suffered by the plaintiff is not so severe as to be 'irreparable.'"[14]

In this case, MJC's moving papers on their face demonstrated delay which, in the absence of any sufficient explanation, would be undue by any standard. MJC acknowledged that Zenray admitted to it in October 1996 that Zenray was copying MJC's products. MJC further conceded that Hills, Mercantile and Target all confirmed to plaintiff shortly after the October 1996 meeting that they were buying copies of MJC's charms from Zenray. Yet plaintiff did nothing until the fall of 1997 and even then waited two months after filing suit to seek a preliminary injunction.

In response to plaintiff's opening concessions, it is not surprising that Point I of Zenray's opposition to the motion is the argument that MJC's delay deprived it of the presumption of irreparable injury that ordinarily arises in copyright infringement cases.[15] Moreover, Zenray pointed out the complete absence of any colorable explanation for the delay, contrasting the plaintiff's

---

**8.** Lervisit Decl. Exs. C–D.

**9.** *Id.* Ex. E.

**10.** *Id.*

**11.** *Richard Feiner and Co. v. Turner Ent. Co., MGM/UA*, 98 F.3d 33, 34 (2d Cir.1996) (citing *inter alia Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)).

**12.** *E.g., Triebwasser v. Am. Tel. & Tel. Co.*, 535 F.2d 1356, 1359 (2d Cir.1976); *Holford USA Ltd.*

*v. Cherokee, Inc.*, 864 F.Supp. 364, 371 (S.D.N.Y. 1994).

**13.** *Richard Feiner and Co.*, 98 F.3d at 34 (citing *ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 65 (2d Cir.1996)).

**14.** *Id.*

**15.** Def. Mem. 7–8.

papers here with cases in which courts in this circuit have excused delays by other litigants.

In these circumstances, MJC bore the burden of coming forward with evidence to excuse its delay or, perhaps, establish irreparable injury independent of the presumption.[16] But plaintiff has not sustained that burden. Its reply affidavit does not even address the delay issue.

To be sure, MJC has made unsworn statements in its reply memorandum to the effect that it began investigating the infringement and engaged in correspondence with Zenray concerning MJC's copyright registrations after the October 1996 meeting, but that negotiations broke down in the fall of 1997.[17] But these assertions do not carry the day for either of two entirely independent reasons.

First, testimonial evidence submitted on motions must be in the form of affidavits or declarations.[18] Unsworn statements by counsel simply will not do. Indeed, plaintiff's awareness of this principle—and the propriety of adhering to it strictly here—are plain from plaintiff's own papers. On the page of plaintiff's reply brief that follows the unsworn statements addressing its own delay, plaintiff objects to the Court's consideration of an unsworn statement submitted by defendants, which MJC characterizes as "simply not evidence" and "nothing more than wasted paper." It then goes on to say that "a submission [of such unsworn material] could even be deemed laughable" "[i]f this situation were not so serious."[19] It is not the holiday season alone that calls to mind images of goose and gander. Hence, the *evidence* before the Court compels the conclusion that plaintiff delayed unreasonably in seeking injunctive relief and therefore has failed to establish a threat of irreparable injury.[20]

Second, plaintiff's unsworn response to Zenray's delay contention would fall considerably short of the mark even if it were in the form of an affidavit. Plaintiff was fully aware of Zenray's alleged infringement for thirteen months before seeking a preliminary injunction. The fact that there may have been discussions about a license and a debate about the validity of plaintiff's copyrights during part of the interval is insufficient to save plaintiff. Such vague suggestions are insufficient to explain the lengthy delay. Moreover, the evidence shows that Zenray at all times disputed the validity of plaintiff's copyrights. In consequence, plaintiff knew that it either had to license Zenray substan-

---

**16.** It is not entirely clear whether undue delay precludes preliminary injunctive relief in cases like this or, instead, merely deprives the plaintiff of the presumption but nevertheless permits an injunction to issue upon proof of irreparable injury. *Bear U.S.A., Inc.,* 909 F.Supp. at 910; *see Tough Traveler, Ltd. v. Outbound Products,* 60 F.3d 964, 969 (2d Cir.1995) (Jacobs, J., concurring). As plaintiff has relied entirely on the presumption and produced no evidence of irreparable injury, the point is academic on this motion.

**17.** Pl. Reply Mem. 6–7. Copies of unauthenticated correspondence attached to MJC's opening brief indicate that MJC sent Zenray's counsel copies of its certificates of registration in September 1996 and again in June 1997 and that copies of the deposits filed with two of the certificates were requested on June 20, 1997 and provided three days later. Pl. Mem. Exs. B–D. These materials are not properly before the Court for reasons discussed below. *See also* 10A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2723, at 65 (1983) ("court may not take cognizance of positions regarding the facts based on exhibits that are merely a part of the brief and have not been otherwise verified or supported").

**18.** *Skyline Corp. v. NLRB,* 613 F.2d 1328, 1337 (5th Cir.1980) ("Statements by counsel in briefs are not evidence."); *Dept. of Econ. Development,* 924 F.Supp. 449, 471 (S.D.N.Y.1996) (same); *Rubinberg v. Hydronic Fabrications, Inc.,* 775 F.Supp. 56, 63 (E.D.N.Y.1991) (same); *Ortiz v. Regan,* 749 F.Supp. 1254, 1263 (S.D.N.Y.1990) (same); *see* FED. R. CIV. P. 43(e); 9 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2416 (1995); *id.* § 2949, at 214–16 ("All affidavits should state the facts supporting the litigant's position clearly and specifically. Preliminary injunctions frequently are denied if the affidavits are too vague or conclusory to demonstrate a clear right to relief under Rule 65.").

**19.** *Id.* 8–9.

**20.** *See, e.g., Richard Feiner and Co.,* 98 F.3d at 35 (reversing grant of preliminary injunction based on 18 month delay); *Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc.,* 909 F.Supp. 896, 910 (S.D.N.Y.1995) (three month delay unreasonable); *Comic Strip, Inc. v. Fox Television Stations, Inc.,* 710 F.Supp. 976, 981 (S.D.N.Y. 1989) (three month delay unreasonable).

tially on terms demanded by Zenray or litigate to vindicate its claimed rights. It did neither.[21] Hence, even if plaintiff's conclusory and unsworn explanation were considered, it would be insufficient.

Plaintiff is not aided by cases which have excused delays that were attributable to investigation of possible infringements, settlement discussions or failures to appreciate the seriousness of the infringing activity. In this case, there was no doubt whatever as to the existence of infringement—according to the plaintiff, Zenray admitted that it was selling copies of MJC's products at the October 1996 meeting. Hills, Mercantile and Target promptly confirmed this and hence the seriousness of the allegedly infringing activity. And apart from the vaguest and most conclusory suggestions, there is no real evidence that there ever were any serious settlement discussions, much less that they were continuous through the eleven months between the October 1996 meeting and the commencement of litigation. In any case, plaintiff indisputably waited two months after filing the action to seek a preliminary injunction. This case therefore falls within *Richard Feiner and Co.*,[22] in which the Court of Appeals reversed a district judge for overlooking delay in circumstances where, as here, the plaintiff was not obliged to wait in order to procure copies of the infringing material or to ascertain the extent of the alleged infringement.[23]

As there is no persuasive evidence of irreparable injury apart from the presumption that arises from a *prima facie* case of infringement, and as the Court holds that plaintiff's unreasonable delay in seeking a preliminary injunction eliminates the presumption in this case, the Court finds that plaintiff is not threatened with the immediate and irreparable injury that is a prerequisite to the issuance of a preliminary injunction. Nevertheless, bearing in mind that the Court retains the ability to "consider the full panoply of available remedies when it fashions

permanent relief,"[24] the Court will require expedited pretrial proceedings and set the matter down for an early trial.

### Personal Jurisdiction

Defendant Vivit Lervisit moves to dismiss the action as to himself for lack of personal jurisdiction. His memorandum states that the motion is based in part on an affidavit, but no such affidavit has been filed. Moreover, Lervisit, who is represented by Texas counsel, has submitted a memorandum which bears all the earmarks of a markup of a memorandum in support of a motion to dismiss a claim brought in the Texas courts under a different long arm statute—it cites almost exclusively Texas authorities. The Court thus has not been provided either with an evidentiary basis for the motion or with an analysis of the law pertinent to New York, as distinguished from the Texas, long-arm statute. The Court declines to pass on the issue in this context.

### Conclusion

Plaintiff's motion for a preliminary injunction is denied on the ground that plaintiff has failed to establish a threat of immediate and irreparable injury. The motion of defendant Lervisit to dismiss for lack of personal jurisdiction is denied without prejudice to renewal on proper papers.

The parties are directed to complete pretrial discovery no later than February 28, 1998. The joint pretrial order, any motions for summary judgment, and requests to charge (if either side demands a jury) shall be filed no later than March 15, 1998.

SO ORDERED.

---

**21.** Zenray's affidavits show that it bought over $100,000 worth of merchandise from MJC following October 1996. Perhaps MJC did not sue earlier for fear of disrupting a profitable business relationship.

**22.** 98 F.3d 33.

**23.** *Id.* at 35.

**24.** *Id.* at 34–35; *see Tough Traveler, Ltd. v. Outbound Products,* 60 F.3d 964, 968 (2d Cir.1995).