**Donald JACKSON, Plaintiff,**

v.

**ROSLYN BOARD OF EDUCATION and the Roslyn Union Free School District, Defendant.**

**No. 05 CV 3102(ADS)(MLO).**

United States District Court, E.D. New York.

June 7, 2006.

McKenna & Schneier, Valley Stream, NY (Patrick M. McKenna, of Counsel), for Plaintiff.

Ingerman Smith, L.L.P., Hauppauge, NY (Warren H. Richmond, III, of Counsel), for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On June 28, 2005, Donald Jackson (the "plaintiff") commenced this action against the Roslyn Board of Education (the "Board"), the Roslyn Union Free School District (the "District") (collectively, the "defendants"), and the Director of the New York State Health Insurance Program in the Employee Benefits Division of the N.Y.S. Department of Civil Service. The action was brought pursuant to 42 U.S.C. § 1983, alleging that the defendants denied his employee disability retirement benefits without adequate notice or a hearing, in violation the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution.

By Notice of Dismissal dated August 9, 2005, the plaintiff voluntarily dismissed his claims against the New York State Department of Civil Service, and the caption was amended accordingly. Only the Roslyn defendants remain in the lawsuit. Presently before the Court is a motion by the defendants to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

## I. BACKGROUND

The following facts are derived from the complaint, and are taken as true for the purpose of this motion. The plaintiff is a fifty-one year old former employee of the District. The plaintiff began working for the District as a custodian in 1983.

In January 2001, the plaintiff suffered severe bone fractures to his leg and ankle while in the course of his employment for the District. The plaintiff's injury required surgery and an extended recuperative period. Because of this injury, the

plaintiff was on Worker's Compensation leave for approximately seven and one half months during the year 2001. The plaintiff returned to work at the end of August 2001, and was assigned to "light duty."

In the spring of 2002, the plaintiff applied for disability retirement benefits. Thereafter, on April 14, 2002, the District served the plaintiff with disciplinary charges. The complaint offers no insight into the nature of the charges against the plaintiff. In July 2002, the District held a hearing to determine the disciplinary charges against the plaintiff, after which the hearing officer recommended that the plaintiff be terminated from his employment. On August 8, 2002, the Board accepted the hearing officer's recommendation and voted to terminate the plaintiff from his position as a custodian. In accordance with State regulations, the plaintiff's enrollment in any medical plan at the time of his dismissal was terminated. At that time, the plaintiff's application for disability retirement benefits was still pending.

On August 29, 2003, the plaintiff was notified by the State that he had been found "permanently incapacitated for the performance of duties." This determination by the State mean that the plaintiff was entitled to disability retirement benefits. The State retroactively established the plaintiff's disability retirement date as August 8, 2002, the last day of his employment with the District. In the complaint, the plaintiff quotes a section of New York Civil Service Rules and Regulations which he claims requires the District to enroll him in the applicable disability retirement insurance plan. According to the plaintiff, he is entitled to disability retirement benefits even though he was terminated for disciplinary reasons because (1) his injury and the filing of his application for disability occurred prior to his termination date; and (2) the State retroactively established his disability retirement date.

Upon receiving notice that he had been found disabled, the plaintiff completed the necessary paperwork and contacted the District's Benefits Department to request that he be enrolled for disability retirement benefits. The plaintiff alleges that he was required to apply through the District because the Collective Bargaining Agreement between the Board and the Custodial Bus Drivers and Maintenance Association for the relevant time period provided that the District was to establish the individual contracts with every eligible employee and the benefits provider. The plaintiff claims that he was informed that the District needed to "check" with the Board and the benefits carrier. Despite the plaintiff's further inquiries, he contends that he never received any response from the District. The plaintiff complains that the defendants' failure to respond to his application for benefits and his later inquiries constituted a denial of his disability retirement benefits without notice and without an opportunity to be heard.

## II. DISCUSSION

### 1. Legal Standards

A court may grant a Rule 12(b)(6) motion to dismiss for failure to state a claim only where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.' " *Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000), *abrogated on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). All of the factual allegations in the complaint must be accepted as true and all inferences drawn in the light most favorable to the plaintiff. *Id.* (citing *Desiderio v. Nat'l*

*Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999)).

In its analysis under Rule 12(b)(6), the court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Id.* at 39 (citing *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991)). At the pleading stage, the plaintiff need only provide a "short and plain statement" that " 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Swierkiewicz*, 534 U.S. at 512–13, 122 S.Ct. at 998 (citing *Conley*, 355 U.S. at 47, 78 S.Ct. at 103).

A Section 1983 claim against a municipality requires the plaintiffs to show that their rights were violated in pursuit of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In order to maintain their claims against the defendants, the plaintiffs must allege an official policy or custom that caused them to be subjected to the denial of a constitutional or statutory right. *See Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 125–27 (2d Cir.2004); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir.1995); *Lovell v. Comsewogue Sch. District*, 214 F.Supp.2d 319, 323–24 (E.D.N.Y.2002) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983)). "Local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's decision making channels." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018, 56 L.Ed.2d 611. Further, actions taken by persons whose activities represent official policy may constitute a custom or policy for Section 1983's purposes. *See Lovell*, 214 F.Supp.2d at 323–24. Such persons "need not be a municipal policymaker for all purposes. Rather, with respect to the conduct challenged, he must be 'responsible under state law for making policy in that area of the [municipality's] business.' " *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000) (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 113, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)).

### 2. Procedural Due Process

The Supreme Court of the United States has directed that procedural due process claims are to be examined in two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State . . .; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (citations omitted).

The defendants do not argue that the plaintiff has no protected property interest in his alleged disability retirement benefits. In this regard, see *Russell v. Dunston*, 896 F.2d 664, 669 (2d Cir.1990) (holding that state disability retirement benefits are a constitutionally protected property interest); *Winston v. City of New York*, 759 F.2d 242, 247–49 (2d Cir.1985) (holding that municipal employee retirement benefits are protected); *Ortiz v. Regan*, 749 F.Supp. 1254, 1258–59 (S.D.N.Y.1990) (same, as to monthly advance retirement benefits); and *Weaver v. New York City Employees' Retirement Sys.*, 717 F.Supp. 1039, 1043 (S.D.N.Y.1989) (same, as to municipal employee retirement benefits). Thus, the first element of the procedural due process analysis is satisfied.

Generally, "some kind of hearing" is required before the State can deprive a

person of a protected property interest. *DiBlasio v. Novello,* 344 F.3d 292, 302 (2d Cir.2003) (citing *Hodel v. Va. Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 299, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981)). However, an exception to the general rule exists when the deprivation is the result of a "random and unauthorized" act of the State. *See Parratt v. Taylor,* 451 U.S. 527, 541, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds by *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Hudson v. Palmer,* 468 U.S. 517, 531–32, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *see also Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990) (citations omitted); *DiBlasio,* 344 F.3d at 302; *Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 880 (2d Cir.1996).

In *Hellenic,* the Second Circuit clearly explained the distinction between "established" state procedures and "random and unauthorized acts," and the surrounding legal framework, as established by *Parratt, Hudson* and the cases that followed those decisions.

When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.... In the latter case, the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy.... When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process....

The Supreme Court's different treatment of the two situations rests on pragmatic considerations.... When a deprivation occurs because of a random, arbitrary act by a state employee "[i]t is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under 'color of law,' is ... almost ... [invariably] beyond the control of the State. Indeed, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." Furthermore, "[that] an individual employee himself is able to foresee a deprivation is simply of no consequence. The controlling inquiry is solely whether the state is in a position to provide for predeprivation process."

*Hellenic,* 101 F.3d at 880–81 (citations omitted).

■ The parties dispute whether the defendants' alleged nonfeasance regarding the plaintiff's disability retirement benefits constituted a "random and unauthorized" act. In this regard, the Court's consideration is limited to the allegations in the plaintiff's complaint. Despite the defendants' urging, at this point the Court cannot say with any degree of certainty whether the defendants' act of merely refusing to entertain the plaintiff's application occurred within the context of established state procedures or if it was a random and unauthorized act of the type discussed in *Hellenic.*

While it may be a reasonable assumption that the defendants receive applications of the type submitted by the plaintiff with some frequency, it is not yet known. There is nothing in the pleadings to indicate what procedures the defendants or the State has in place concerning the filing of such applications; the routine processing of those applications; and the frequen-

cy with which the defendants actually refuse benefits to those applicants who claim they have had their eligibility determined by the state.

In the Court's view, under these circumstances we must await the presentation of the evidence to establish whether the scenario that the plaintiff found himself in is common; whether the defendants were or should have been aware of the situation; and ultimately whether the defendants should have, or even could have, provided the plaintiff with any form of pre-deprivation process. Considering the liberal pleading standard, there is enough alleged in the complaint to permit the plaintiff to proceed to discovery. Accordingly, the defendants' motion to dismiss the plaintiff's due process claim is denied.

### 3. As to the Equal Protection Claim

The Fourteenth Amendment to the United States Constitution provides that no state shall ... deny to any person within its jurisdiction the equal protection of the laws. This clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). In a case such as this, the plaintiff may maintain an equal protection claim as a "class of one" so long as he establishes that he was treated differently than similarly situated persons and that the unequal treatment he received was motivated by personal animus. *Harlen Assoc. v. Inc. Village of Mineola*, 273 F.3d 494, 500 (2d Cir.2001); *Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir.2004) (stating elements for "selective prosecution theory" of equal protection).

In this case the plaintiff has failed to state a claim for a violation of the equal protection clause because he does not allege that he was treated differently than similarly situated individuals. Accordingly, the defendants' motion to dismiss the plaintiff's equal protection claim is granted, and this cause of action is dismissed.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the defendants' motion to dismiss the plaintiff's procedural Due Process claim for failure to state a claim is DENIED; and it is further

**ORDERED**, that the defendants' motion to dismiss the plaintiff's Equal Protection claim for failure to state a claim is GRANTED; and it is further

**ORDERED**, that the parties are directed to contact United States Chief Magistrate Judge Michael L. Orenstein for the purpose of implementing a discovery schedule.

**SO ORDERED.**